Filed 4/6/21  P. v. Levette CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B303254 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A968146) |
| v. | |
| ROCHELLE LEVETTE LITTLEJOHN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Drew E. Edwards, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1988, after a preliminary hearing, defendant and appellant Rochelle Levette Littlejohn pled guilty to second degree murder, stipulating that the preliminary hearing transcript revealed the factual basis for the plea. She was sentenced to 15 years to life in state prison.

On May 24, 2019, defendant filed a petition for resentencing pursuant to Penal Code section 1170.95.[1] After appointing counsel for defendant and reviewing the petition, the People's opposition, and defendant's reply, the trial court summarily denied the petition, finding that defendant was not entitled to resentencing relief because she was the actual killer and was not convicted on either a theory of felony murder or the natural and probable consequences doctrine.

Defendant timely filed a notice of appeal. She argues that the trial court erred in summarily denying her petition without conducting an evidentiary hearing. She further contends that section 1170.95 "treats similarly situated individuals differently or arrives at different results for such individuals base[d] [upon] factors that are arbitrary, capricious, irrational or unpredictable, [which] violates due process and state and federal proscriptions against cruel and unusual punishments."

We conclude that the trial court properly denied defendant's section 1170.95 petition. Accordingly, we affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

## FACTUAL AND PROCEDURAL BACKGROUND[2]

After a preliminary hearing held on June 23, 1988, defendant was held to answer on a charge of murder (§ 187, subd. (a)) with a firearm-use enhancement.

Yolanda Langford (Langford) testified at the preliminary hearing that on April 25, 1988, she was on a three-way call with her friend Wendolyn Spikes (Spikes) and defendant. Langford asked defendant why she and Spikes were arguing.

Sometime later that day, Langford was at her father's house on West 71st Street in Los Angeles with Spikes and another friend, Deborah Murphy (Murphy). At around 8:30 p.m., defendant drove her jeep to the house and honked the horn. Langford went outside to see who was honking and walked toward the jeep. Defendant said, "'Yolanda, what the fuck you talking about? What's you mean all this bullshit?'" Langford and defendant argued with raised voices. Spikes then went outside, stood near Langford, and looked at defendant. Defendant stated, "'I just got out of Sybil Brand. I don't give a fuck.'"

Defendant got out of the jeep and was holding a handgun. Murphy, who had just left the house, yelled, "'She got a gun.'" Langford said to Spikes, "'Let's just go back in the house because she's got a gun.'" Defendant fired the gun into the air.

Spikes turned to go back to the house. Defendant said, "'I'm tired of this shit, all these damn phone calls." Defendant

---

[2]     Neither the felony complaint nor information is included in the record on appeal. The charges and conviction are evident based on the transcripts from the preliminary hearing and plea hearings and the abstract of judgment, which are part of the appellate record.

then shot Spikes in the base of her neck, killing her. Defendant got back in her jeep and drove away.

On November 15, 1988, the parties reached a negotiated plea bargain to reduce the charge to second degree murder and drop the firearm-use enhancement. After waiving her constitutional rights, defendant pled guilty to second degree murder and stipulated that the preliminary hearing transcript revealed a factual basis for the plea. She was sentenced to the agreed upon term of 15 years to life in state prison.

On May 24, 2019, defendant, in propria persona, filed a section 1170.95 petition for resentencing. The public defender was appointed to represent her.

The People filed a response in opposition to the petition and attached as exhibits, inter alia, transcripts of the preliminary hearing, change of plea hearing, and the abstract of judgment. The People argued, inter alia, that because defendant was the actual killer, she was ineligible for section 1170.95 resentencing.

Defendant, through her appointed attorney, filed a reply to the People's opposition.

On November 18, 2019, the trial court summarily denied the petition and found that defendant was not entitled to relief as a matter of law. In so ruling, the trial court determined: "The record of conviction reflects that the petitioner was the actual killer and was convicted of murder on a theory of being the direct perpetrator and not on a theory of felony murder of any degree, or a theory of natural and probable consequences."

## DISCUSSION

I. *Standard of Review*

We review the trial court's order de novo. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018

4

[application of law to undisputed facts]; *A.S. v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

II. *Relevant Law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).) The statute applies to persons convicted after trial and to persons who entered a guilty plea. (§ 1170.95, subd. (a)(2); *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919 ["Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply"].)

In order to obtain Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019, resentencing relief, the petitioner must proceed sequentially through section 1170.95's separate steps. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140 (*Lewis*), review granted Mar. 18, 2020, S260598; see also *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [sequential structure of a statutory scheme supports interpretation that acts required by the statutes occur in the same sequence].) First, a defendant must file a facially sufficient section 1170.95 petition. The petitioner must aver that he is eligible for relief because (1) an accusatory pleading was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder; and (3) he could not be convicted

5

of murder as a result of the recent amendments to sections 188 and 189.  (§ 1170.95, subds. (a)(1)-(3), (b)(1)(A).)

The trial court must immediately review the petition and, if the petitioner is ineligible for resentencing as a matter of law because of some disqualifying factor, the trial court must dismiss or deny the petition.  (See *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328–333 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58 (*Cornelius*), review granted Mar. 18, 2020, S260410; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140.)[3]

However, if the petition is facially sufficient, the petitioner is entitled to the appointment of counsel, if requested, and the People may then brief the question of whether the petitioner is entitled to relief.  (§ 1170.95, subd. (c); *Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 331–332.)  In contrast to the first step showing, the trial court makes the second step determination with the benefit of briefing and analysis by both parties, thereby permitting the trial court to undertake more informed analysis concerning a petitioner's "entitle[ment] to relief," relief meaning an evidentiary hearing, not necessarily entitlement to resentencing.  (§ 1170.95, subd. (c); *Drayton*, *supra*, 47 Cal.App.5th at p. 975.)[4]  When making this

---

[3]     Disqualifying factors, or factors indicating ineligibility, include, for example, a petitioner who admitted to being the actual killer (*Verdugo, supra*, 44 Cal.App.5th at pp. 329–330) or a petitioner that the jury found was the actual killer (*Cornelius*, *supra*, 44 Cal.App.5th at p. 58).

[4]     Although the same type of information from the record of conviction could result in denial of a petition at either prima facie step, the two steps are procedurally distinct and should not be

6

determination, "the trial court should assume all facts stated in the section 1170.95 petition are true.  [Citation.]  The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . .  [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, at p. 980; see also *Lewis*, *supra*, 43 Cal.App.5th at p. 1138 [the contents of the record of conviction defeats a petitioner's prima facie showing only when the record "show[s] as a matter of law that the petitioner is not eligible for relief"].)

Only if the trial court determines that the petitioner has made a prima facie showing of entitlement to relief must it issue an order to show cause.  (§ 1170.95, subd. (c).)

read as a redundancy written into the statute.  The statute contemplates two separate determinations that the trial court must make at different times during the petition procedure. (*Verdugo*, *supra*, 44 Cal.App.4th at pp. 328–329; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 109), review granted Nov. 10, 2020, S264684 [concluding that the right to counsel attaches upon the filing of a facially sufficient petition and disagreeing with *Verdugo*, *supra*, at p. 320].)

III. *The trial court did not err*

We conclude that the trial court properly denied defendant's petition for resentencing.

In 1988, defense counsel stipulated that the factual basis of defendant's guilty plea was the evidence adduced at the preliminary hearing. The transcript of that hearing indisputably shows that defendant was the actual killer of Spikes. (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166 [relying upon the transcripts from the preliminary and plea hearings in affirming a trial court order denying a section 1170.95 petition].) As a result, the plea proceedings established as a matter of law that defendant was the actual killer. (*People v. Nguyen*, *supra*, at p. 1167 [a defendant's "murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate" that the defendant was convicted under a theory not encompassed by section 1170.95].) Because section 1170.95 does not offer relief to actual killers, defendant is ineligible for relief as a matter of law. (See, e.g., *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, review granted Aug. 12, 2020, S263219 [because the defendant was not prosecuted on a felony murder or natural and probable consequences theory, but rather as the actual killer, he was ineligible to resentencing relief as a matter of law]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674–675, review granted July 8, 2020, S262481.)

Curiously, defendant does not dispute that she was convicted as the actual killer. Rather she contends that she remains eligible for relief because she was convicted as the actual killer under the natural and probable consequences doctrine. She

8

is wrong.  The natural and probable consequences doctrine is based on a theory of vicarious liability.  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1106, review granted Nov. 13, 2019, S258175.)  As the actual killer, defendant by definition could not have been convicted under the natural and probable consequences theory.

Urging reversal, defendant seems to argue that because there was no evidence of malice or an intent to kill, even though she was the actual killer, she was entitled to an evidentiary hearing.  Again, she is mistaken.  As the actual killer, she does not fall within the purview of section 1170.95.  There is no statutory requirement for a separate finding of malice.

Defendant's reliance upon *People v. Martinez* (2019) 31 Cal.App.5th 719 (*Martinez*) for the proposition that malice must be proved even for actual killers is misplaced.  Setting aside the fact that defendant did not raise this legal authority until she filed her reply brief, *Martinez* does not so hold; in fact, it specifically recognizes otherwise.  As the *Martinez* court explicitly recognized:  "Senate Bill 1437 was enacted to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer.'" (*Martinez*, *supra*, at p. 723.)  This language confirms that (1) actual killers are excluded from section 1170.95, and (2) there is a difference between persons convicted of murder as the actual killers and persons convicted of murder pursuant to the natural and probable consequences doctrine.

Finally, we reject defendant's claim that section 1170.95 violates her federal due process rights and the constitutional prohibition against cruel and unusual punishment.  Regarding her cruel and unusual punishment claim, a defendant bears a

"considerable burden" of showing that she has been subjected to cruel and unusual punishment.  (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)  After all, the Legislature has considerable latitude in defining and setting the consequences of criminal offenses, and the Legislature could rationally decide to change one area of law and not another.  (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888–889.)  It follows that the enactment of a law providing postconviction relief for defendants convicted of murder under two theories of vicarious liability, as opposed to a defendant who was convicted as the actual killer, "does not retroactively convert defendant's otherwise lawful sentence into a constitutionally 'unusual' one."  (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1469.)

Regarding her federal claim, we are not convinced that defendant's due process rights were violated by the alleged arbitrary deprivation of a state-created right.  As defendant correctly points out, when state law gives a criminal defendant the expectation of receiving a certain right or benefit, the denial of that right may violate federal due process.  (See *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [deprivation of state law right to jury determination of sentence violated the defendant's federal due process rights].)  Here, defendant had no right to be resentenced.  Rather, she remains validly convicted of second degree murder pursuant to her guilty plea.  Section 1170.95 only concerns a potential reduction in sentence, not defendant's constitutional rights.

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
       ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

11